E-FILED
Tuesday, 05 April, 2022  11:40:08 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

JOHN DOE,

          Plaintiff,

v.

BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS, and in
their individual and official capacities,
VIRGINIA VERMILLION,
VIKRAM AMAR,
VERITY WINSHIP, and
LESLEY WEXLER,

          Defendants.

Case No.: 22-
Hon.

---

David A. Nacht (P47034)
Amanda M. Ghannam (P83065)
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main St., Suite 555
Ann Arbor, Michigan 48104
(734) 663-7550
dnacht@nachtlaw.com
aghannam@nachtlaw.com

---

## PLAINTIFF'S VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff, John Doe, by and through his attorneys, NACHTLAW, P.C., hereby states his

Complaint as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    This is an action for disability discrimination in violation of Title II of the

Americans with Disabilities Act (hereinafter referred to as the "ADA"), 42 U.S.C. § 12111, *et seq*.,

as amended; disability discrimination in violation of Section 504 of the Rehabilitation,

Comprehensive Services, and Developmental Disabilities Act (hereinafter referred to as the

"Rehabilitation Act"), 29 U.S.C. § 794; and constitutional violations inflicted on Plaintiff John Doe by the Defendants while acting under color of state law pursuant to 42 U.S.C. § 1983.

2.      This Court has jurisdiction pursuant to 42 U.S.C. 12101, *et seq.*, (ADA), 29 U.S.C. 794 (Rehabilitation Act), 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims).

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2), as the events giving rise to this cause of action occurred in the Central District of Illinois, County of Champaign, and the University is located in the Central District of Illinois, County of Champaign.

4.      Plaintiff John Doe is a resident of Louisville, Jefferson County, Kentucky. He requests anonymity in this lawsuit due to the impact of Defendants' actions on his education, career, and livelihood and the potential for further harm if his identity were to be made public. Defendants will be readily aware of John's identity upon review of the allegations in this Complaint. If necessary and requested by this Court, John will file the appropriate motion for anonymity.

5.      Defendant Board of Trustees of the University of Illinois is a body corporate and politic having power, *inter alia*, to contract and be contracted with, to sue and be sued, to plead and be impleaded, to acquire, hold and convey real and personal property, and to carry out other duties as needed relating to the management or government of all departments and relations of the University of Illinois and all of its campuses. *See* 110 ILCS 305/1.

6.      The University of Illinois (or, the "University") is a State of Illinois public institution that receives federal funds, with its principal offices located at 108 Henry Administration Bldg., Urbana, Illinois.

7.      Defendant Virginia Vermillion is or was at all relevant times the Assistant Dean for Academic Administration & Dean of Students at the University's College of Law, and upon information and belief, resides in Champaign County, Illinois. She is sued in her official and individual capacities.

8.      Defendant Vikram Amar is or was at all relevant times the Dean of the University's College of Law and, upon information and belief, resides in Champaign County, Illinois. He is sued in his official and individual capacities.

9.      Defendant Lesley Wexler is or was at all relevant times an Associate Dean for Academic Affairs and, upon information and belief, resides in Champaign County, Illinois. She is sued in her official and individual capacities.

10.     Defendant Verity Winship is or was at all relevant times an Associate Dean for Academic Affairs and, upon information and belief, resides in Champaign County, Illinois. She is sued in her official and individual capacities.

## FACTUAL ALLEGATIONS

**Mr. Doe Attends the University of Illinois College of Law, Falls Ill, and is Forced by Defendants to Withdraw**

11.     Plaintiff John Doe is a former law student at the University of Illinois College of Law (or, the "Law School").

12.     Like many Americans, Mr. Doe suffers from disabilities in the form of clinically diagnosed depression and anxiety.

13.     Anxiety disorders affect 18.1% of adults in the United States, and approximately one-half of people diagnosed with an anxiety disorder are also diagnosed with depression.[1]

---

[1] Anxiety & Depression Association of America, https://adaa.org/understanding-anxiety/facts-statistics , last accessed March 8, 2022

3

14.     Among the legal profession, these statistics are even higher, with 28% of attorneys reporting symptoms of depression and 23% reporting symptoms of anxiety.[2]

15.     These disabilities cause symptoms such as reoccurring feelings of deep sadness, irritability, negative thoughts, racing thoughts, difficulty concentrating, increased heart rate, fatigue, muscle tension, changes in weight, and sleep disturbances.

16.     Mr. Doe enrolled in the College of Law in the Fall of 2016.

17.     For the first year of his law school career, Mr. Doe excelled, without accommodation, maintaining a 3.0 GPA and enduring the intense daily pressures typically associated with law school despite his disabilities.

18.     Mr. Doe completed all of his coursework and was involved in extracurriculars such as a Moot Negotiations Competition and a law school softball team.

19.     Mr. Doe also fostered strong and healthy relationships with his classmates and law school faculty.

20.     However, in early 2018, during his second year of law school, Mr. Doe's anxiety and depression became near-debilitating in their severity.

21.     In addition to the other symptoms of anxiety and depression that Mr. Doe had previously experienced, Mr. Doe began to experience overwhelming feelings of panic and suffocating sensations.

22.     Symptoms of such severity were unfamiliar to Mr. Doe and caused him to feel paralyzed, confused, and afraid.

---

[2] "Legal field has high rates of substances use, mental illness", The Concord Monitor, https://www.concordmonitor.com/Legal-profession-suffers-with-high-rates-of-substance-misuse-and-mental-illness-41484963, last accessed March 8, 2022

23.     Because symptoms of this severity were new to Mr. Doe, he lacked the appropriate knowledge and tools to cope with what he was experiencing.

24.     During the spring semester of his "2L" year in 2018, Mr. Doe's anxiety symptoms became so severe that he physically could not bring himself to walk through the Law School's doors.

25.     Mr. Doe often drove to campus and parked his car, fully intending to attend his scheduled classes and feeling prepared for the day, but as soon as it came time to walk into the law school building, feelings of panic and anxiety overcame him, paralyzing him and forcing him to return home.

26.     Mr. Doe was often so paralyzed by anxiety that he was unable to leave his home at all.

27.     As a result, Mr. Doe missed some class sessions.

28.     In or around April 2019, Defendant Virginia Vermillion, the Law School's Dean of Students, called Mr. Doe and asked him to meet with her.

29.     At the meeting, Mr. Doe explained to Defendant Vermillion that the overwhelming severity of his anxiety and depression symptoms were interfering with his attendance.

30.     Instead of referring Mr. Doe to University health resources, engaging in an interactive process, accommodating Mr. Doe's disabilities, or offering him any resources or support whatsoever, Defendants gave Mr. Doe an ultimatum: he could either withdraw from enrollment in the College of Law altogether or receive failing grades in all of his classes.

31.     Despite his mental health struggles, Mr. Doe was not failing any of his classes at that time; in fact, his grades would be primarily determined by semesters-end final exams that had not yet taken place.

32. Defendant Vermillion's threat of "failing" Mr. Doe for the semester effectively gave Mr. Doe no choice but to withdraw from the University.

33. Defendants' threats forced Mr. Doe to withdraw against his will, and he withdrew from the College of Law prior to completing the spring 2019 semester.

**Plaintiff Seeks Treatment for his Disabilities**

34. After withdrawing from the College of Law, Mr. Doe immediately sought medical treatment.

35. Mr. Doe knew that he required a medical intervention to cope with how his depression and anxiety were impacting important parts of his life.

36. In addition to interfering with his legal education, Mr. Doe had gained 20-25 pounds over the course of Spring-Summer 2019, and after being forced to withdraw from the College of Law, he had significant trouble getting out of bed and experienced strained personal relationships.

37. Mr. Doe began treating with a mental health therapist.

38. Mr. Doe's treatment plan included an acute course of weekly therapy sessions, as well as interventions related to diet, sleep-hygiene, and exercise.

39. Mr. Doe spent over a year focusing on treating his disabling mental health conditions and was thus able to make significant progress in his treatment and coping skills.

**Plaintiff Seeks to Complete His Legal Education**

40. After successfully treating his severe depression and anxiety symptoms, Mr. Doe sought to complete his law degree.

41. In July of 2020, Mr. Doe followed the University's process for re-admission including completing a new application and submitting a written statement, advocating for himself

6

and explaining what had led to his withdrawal, how his symptoms had improved, and why he was ready to complete his course of study.

      42.     Mr. Doe was clear that his leave of absence was necessitated by his disabilities, that he had received and committed to his mental health treatment, and that he was prepared to return to law school.

      43.     Mr. Doe wrote, in part:

…[W]hat I am asking is to be allowed to return for my final semester and complete my degree upon successful completion of the academic requirements. I understand that I am not entitled to this…

My problem was never that I struggled with the material … the reason that I am in this incredibly vulnerable position is because I failed to manage my mental health… I felt completely paralyzed and was filled with anxiety, a feeling that I had never experienced before. Because I neglected to recognize it and handle it effectively, I let that feeling imprison me. In the latter part of the [spring 2019] semester, I could barely leave my house when I needed groceries. This year, I sought out extensive psychiatric treatment for anxiety and dysthymia… I have experienced a great deal of progress and relief since beginning this treatment, which primarily includes one-on-one counseling…

I wish that the fear, anxiety, and depression that I have gone through left some physical mark, like a broken bone or a missing limb, so that I wouldn't be tasked with attempting to explain it. Everyone knows what a broken bone feels like, but until last year, I had no idea what clinical anxiety looked or felt like… If you allow me to return this fall, I will do everything to show you that you made the right decision and that I can put this nightmare behind me.

      44.     In response, the Law School sent Mr. Doe a re-admission letter signed by Defendant Lesley Wexler on August 5, 2020 and wrote, in part:

Thank you for your recent and open letter detailing the efforts you have undertaken to ensure you were ready to return to the College. This level of personal analysis and care is not always easy to undertake. And, we truly appreciate that it is even more difficult to share that level of analysis with others outside of one's family circle. Nonetheless, you took the necessary but difficult steps… your record demonstrates that you are a person of obvious talent and enormous potential. The faculty and administrators of the College of Law stand ready to assist you in realizing that potential, but we can do so only if you will invest yourself in your studies…

45.     Defendants' inference that Mr. Doe previously failed to "invest himself" in his studies reflects Defendants' unwillingness to acknowledge, much less accommodate, Mr. Doe's disabilities as required by law.

46.     Defendants placed strict conditions on Mr. Doe's readmission:

With that submission and your completed application for readmission to the University of Illinois College of Law, the College has decided to conditionally readmit you for the Fall 2020 semester, subject to the following terms and conditions. If you fail to comply strictly with all of these terms and conditions, the College may take any action deemed appropriate, including but not limited to dropping you from any course or treating you as having withdrawn from the College of Law. … Your professors will be advised of their need to monitor your attendance and to report any absences. This attendance report will include late arrivals and early departures, in addition to any other absences from class or mandatory programs. Moreover, you will be responsible for verifying your attendance on a weekly basis throughout each semester by emailing Dean Vermillion an accurate statement as to which classes you failed to attend, arrived/logged in late, and/or departed/logged off prior to the end of class. You will also be subject to all other terms and conditions applicable to those who are admitted to the College of Law.

47.     These conditions were excessive, reflected unequal and impermissible treatment of Mr. Doe solely because of his disabilities, and imposed requirements and restrictions on him not imposed upon nondisabled students.

48.     These conditions created significant additional stress, exacerbating the symptoms of Plaintiff's anxiety and depression.

**Plaintiff Returns to Law School and Completes the Requirements Necessary to Graduate**

49.     Mr. Doe returned to Law School in the Fall of 2020.

50.     Mr. Doe came back to school prepared, engaged, and excited to complete his law degree.

51.     Defendant Vermillion was primarily responsible for communicating with Mr. Doe regarding the conditions of his readmission.

8

52.    As soon as Mr. Doe returned to school, Dean Vermillion displayed hostility towards Mr. Doe.

53.    Defendant Vermillion was skeptical and critical of Mr. Doe's actions undertaken in an attempt to comply with the University's conditions for his readmission.

54.    For example, in or around October 2020, Defendant Vermillion accused Mr. Doe of lying about having sent her his required weekly attendance summary email, despite Plaintiff proffering documentary proof he sent the email in question.

55.    Mr. Doe perceived that Defendants expected and were waiting for him to fail.

56.    Defendants' course of conduct, and especially the actions of Dean Vermillion, reflected an animus towards Mr. Doe because he is disabled.

57.    Rather than make any effort to accommodate Mr. Doe, Defendants treated him as if he had been subject to academic or behavioral discipline, forcing him to withdraw and then subjecting him to additional requirements upon his return, while refusing to consider or discuss reasonable accommodations.

58.    Despite a total lack of support from the University and Defendant Vermillion, Mr. Doe still successfully completed the Fall 2020 semester with excellent attendance and all A and B grades.

59.    Mr. Doe began the Spring 2021 semester with only one graduation requirement left: a three-credit course that met the law school's "experiential" learning requirement.

60.    Mr. Doe enrolled in an insurance writing course that met this requirement.

**Defendants Expel Plaintiff from the Law School**

61.    During the Spring 2021 semester, Mr. Doe attended his final law school class remotely from his home in Louisville, Kentucky.

9

62.     Mr. Doe believed he had completed the University's re-admission requirement that he send check-in emails to Dean Vermillion, having done so for the entirety of the previous Fall 2020 semester upon his return to school.

63.     Mr. Doe always attended his virtual classes, interacted with his professor frequently, and completed all of his assignments.

64.     Unbeknownst to Mr. Doe, Defendant Vermillion emailed Mr. Doe, asking him to continue checking in with her.

65.     Mr. Doe did not immediately see Defendant Vermillion's email; he had been regularly checking in with his only professor for the semester and, to his knowledge, was on track to complete the course and graduate, so he had not checked his university e-mail on a daily basis.

66.     Before Mr. Doe even had an opportunity to read Defendant Vermillion's emails, on February 15, 2021, he received a letter from the University, signed by Defendant Verity Winship and copied to Defendants Vermillion and Amar, stating:

> Your record of academic inattention, failure to comply with the terms of your conditional re-admission of which you have been repeatedly reminded, your failure to enroll in the necessary course work required for graduation, and your failure to respond to various communications from the College of Law has been brought to our attention. As a result, the College of Law is now initiating the necessary steps to permanently withdraw you from your Spring 2021 course and from enrollment at the University of Illinois College of Law, effective immediately. Since you are being withdrawn from your Spring 2021 course specifically, and from the College of Law more generally, you are prohibited from participating in this class or any other College of Law classes. Any violation of this prohibition will result in an immediate referral to the University of Illinois Police Department. If you have any questions, please do not hesitate to contact me. We wish you the best in your future endeavors.

67.     The allegations set forth in the letter were false.

68.     Mr. Doe had not demonstrated "academic inattention".

69.     To the contrary, Mr. Doe had dedicated himself to his studies upon his return, was less than three credits away from obtaining his law school degree, was enrolled in a three-credit

course, had completed all of the coursework to date, and had communicated regularly with his professor.

70.     Mr. Doe had worked extremely hard to treat his mental health and commit himself to the education in and practice of law, including by complying with all of the University's requirements for his re-admission throughout the Fall 2020 semester.

71.     The only event preceding Mr. Doe's expulsion was a missed email from Defendant Vermillion.

72.     Defendants' decision to expel Mr. Doe was arbitrary and capricious and was not based upon Mr. Doe's academic performance or any disciplinary or behavioral issue.

73.     Defendant Vermillion had Mr. Doe's personal phone number, and had called him in the past, including to ask him to come to her office in order to force him to withdraw in Spring 2018, but did not attempt to call or make any other attempts to communicate with Mr. Doe before Defendants expelled him.

74.     On information and belief, Defendant Vermillion did not make any attempt to contact Mr. Doe's professor to confirm that he was attending class and completing his assignments prior to initiating his expulsion.

75.     To add insult to injury, Defendants had just billed Mr. Doe and his family $5500 for the full semester, which was paid in full, just prior to his expulsion and permanent banishment from campus.

76.     After sending Mr. Doe the expulsion letter, Defendants also told Mr. Doe that he would have also needed to complete an upper-level writing course in order to graduate.

77.     Mr. Doe had in fact already completed this requirement, but a miscommunication between a former professor and the University's own Registrar's Office erroneously caused

Defendants to mistakenly believe that a previous class eligible to fulfill this requirement did not count towards the requirement.

78.     Mr. Doe had also taken another course in the Fall of 2020 that was eligible to meet this requirement, but did not specify that this course was his "upper-level writing course" for purposes of the requirement because he had already completed the requirement.

79.     Mr. Doe had responded to every communication he received throughout the Fall 2020 semester, worked diligently to treat his disabilities, maintained his attendance and grades, completed all of his academic requirements, and otherwise demonstrated his academic competence and professionalism.

80.     Defendants did not afford Mr. Doe any notice prior to his immediate expulsion and banishment from campus.

81.     Defendants did not afford Mr. Doe any opportunity to be heard prior to his immediate expulsion and banishment from campus.

82.     Defendants were determined to permanently expel Mr. Doe from the College of Law and keep him out of the legal profession because of his disabilities (ironically, despite the fact that lawyers suffer from higher rates of anxiety and depression than the general population).

83.     On February 18, 2021, Defendant Winship sent Mr. Doe an email stating only: "After further review, the dismissal detailed in my February 15 letter stands. This concludes the matter. We wish you the best in your future endeavors."

84.     But for Mr. Doe's disabilities, Defendants would not have expelled Mr. Doe from the College of Law.

85.      Because of Defendants' actions, Mr. Doe has been delayed in the pursuit of his chosen profession in the legal field by over a year – possibly permanently -- and has lost out on valuable educational and work experience.

86.      In the fall of 2021, Mr. Doe was diagnosed with lymphoma, a type of cancer that affects the body's lymphatic system. It is possible that his struggles with depression and anxiety during his law school experience were linked to the fact that he had cancer and had not yet been diagnosed.

87.      Mr. Doe has undergone several grueling rounds of chemotherapy. with all of its notoriously brutal associated side effects, and is recovering from the toll that cancer and chemo have taken on him. He is both physically and psychologically ready and determined to return to school.

88.      Now that Mr. Doe is on the path to recovery from cancer, the time has come for him to complete his education and pursue his dream of becoming a practicing attorney and contributor to the legal profession. For these reasons, he seeks an equitable order from this Court enjoining his wrongful expulsion, compelling Defendants to restore his status as a student in good standing, and compelling Defendants to remove any references to his wrongful expulsion from their records.

## COUNT I
## Disability Discrimination in Violation of Title II of the Americans with Disabilities Act
## 42 U.S.C. § 1213

89.      Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

90.      Defendant Board of Trustees of the University of Illinois is a public entity within the meaning of the Americans with Disabilities Act, 42 USC § 12131, 28 CFR § 35.104.

91.     Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act, 42 USC § 12131, 28 CFR § 35.104 and 28 CFR § 35.108.

92.     The University has violated the ADA, 42 USC § 12132, 28 CFR § 35.130, by, inter alia:

>   (a) Excluding Plaintiff from participation in or denying him the benefits of the services, programs, or activities of a public entity,
>
>   (b) Failing to accommodate Plaintiff's disabilities and failing to engage in the interactive process as required by the ADA,
>
>   (c) Subjecting Plaintiff to discrimination, and
>
>   (d) Otherwise limiting Plaintiff in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or services offered by the University.

93.     But for Plaintiff's disabilities, Defendants would not have subjected Plaintiff to such actions.

## COUNT II
### Disability Discrimination in Violation of Section 504 of the Rehabilitation Act
### 29 U.S.C § 794

94.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

95.     Section 504 of the Rehabilitation Act of 1973, 29 USC § 701 et seq. ("Section 504"), in relevant part, prohibits discrimination against people with disabilities in "programs and activities" that receive federal funding.

96.     The University is a program or entity within the ambit of Section 504, 29 USC § 794.

97.      Plaintiff is a person with a disability as defined by Section 504, 29 USC § 705, sections (9) and (20).

98.      Defendants discriminated against Plaintiff because of his disabilities by the conduct described herein including, but not limited to, imposing overly burdensome conditions on his readmission to the University, expelling him from the University, and banishing him from campus, in violation of Section 504, 29 USC § 794.

99.      But for Plaintiff's disabilities, Defendants would not have subjected Plaintiff to such actions.

## COUNT III
## 42 USC §1983: Equal Protection

100.      Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

101.      Plaintiff has a constitutional right to equal protection of the law, and to be free from discrimination or disparate treatment based on disability.

102.      Defendants had a duty to respect and/or protect Plaintiff's constitutional rights under 42 U.S.C. §1983, including his 14th Amendment right to equal protection of law.

103.      At all relevant times, Defendants were acting under color of law.

104.      Defendants' actions and omissions, as described herein, constituted a deprivation of Plaintiff's clearly established 14th Amendment rights to equal protection of law, in violation of 42 U.S.C. §1983, which were clearly established at the time of Defendants' conduct and of which a reasonable person would have known.

105.      Defendants discriminated against Plaintiff because of his disabilities by the conduct described herein including, but not limited to, imposing overly burdensome conditions on his readmission to the University, expelling him from the University, and banishing him from campus.

106.    Defendants intentionally treated Plaintiff differently from other similarly situated students, and there was no rational basis for the difference in treatment.

107.    Defendants singled Plaintiff out for disparate treatment, and there was no rational basis for their conduct.

## COUNT IV
## 42 U.S.C. 1983: Due Process of Law

108.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

109.    At all relevant times, Defendants were acting under color of law.

110.    Plaintiff has a constitutional right to due process of law.

111.    Plaintiff had a constitutionally protected interest in his right to pursue his chosen profession and to continue his education at the University.

112.    Defendants deprived Plaintiff of that right when they expelled him without prior notice or an opportunity to be heard.

113.    Defendants' actions and omissions, as described herein, constituted a deprivation of Plaintiff's clearly established 14th Amendment rights to due process of law, in violation of 42 U.S.C. §1983, which were clearly established at the time of Defendants' conduct and of which a reasonable person would have known.

## DAMAGES

114.    As a direct and proximate result of the University's conduct, Plaintiff has suffered economic damages, including, but not limited to, tuition funds, lost earning and employment opportunities, attorney fees.

115.    As a direct and proximate result of the University's conduct, Plaintiff has suffered mental and emotional distress, anxiety, depression, reputational harm, interference with education and educational opportunities, and other non-economic damages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court grant him:

a.      Prospective injunctive relief, as permitted by law and equity, against the Board of Trustees of the University of Illinois and the individual Defendants in their official capacities, in the following form:

i.      A declaration that the practices and actions of Defendants are unconstitutional and in violation of the ADA and Rehabilitation Act;

ii.      An order of this Court enjoining Defendants from wrongfully expelling Plaintiff from the University of Illinois College of Law;

iii.      An order of this Court compelling Defendants to reinstate Plaintiff effective immediately as a student in good standing;

iv.      An order of this Court compelling Defendants to remove any reference to Plaintiff's wrongful expulsion from their records; and

v.      An order of this Court ordering Defendants to represent Plaintiff's status as a student in good standing to inquiring third parties.

b.      Damages against Defendant Board of Trustees of the University of Illinois and Defendants Vermillion, Amar, Winship, and Wexler in their individual capacities, including:

i.      Compensatory damages for monetary and non-monetary loss in whatever amount Plaintiff is found to be entitled;

ii.      Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled.

c.      An award of interest, costs and reasonable attorney fees; and

d.      Such other relief as this Court finds appropriate.

Respectfully submitted,

NACHTLAW, P.C.

By: /s/ David Nacht
David A. Nacht (P47034)
Attorney for Plaintiff
101 N. Main St., Suite 555
Ann Arbor, Michigan 48104
(734) 663-7550
dnacht@nachtlaw.com

Date: April 5, 2022

## **VERIFICATION**

I declare that the facts stated above in Plaintiff's Complaint are true to the best of my personal knowledge, information, and belief.

*John Doe*
John Doe (Apr 5, 2022 12:10 EDT)
_____
JOHN DOE

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

JOHN DOE,

    Plaintiff,         Case No.: 22-

                   Hon.

v.


BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS, and in
their individual and official capacities,
VIRGINIA VERMILLION,
VIKRAM D. AMAR,
LESLEY WEXLER, and
VERITY WINSHIP,

    Defendants.

---

David A. Nacht (P47034)
Amanda M. Ghannam (P83065)
NACHTLAW, P.C.
Attorney for Plaintiff
101 N. Main St., Suite 555
Ann Arbor, Michigan 48104
(734) 663-7550
dnacht@nachtlaw.com
aghannam@nachtlaw.com

---

## DEMAND FOR TRIAL BY JURY

   Plaintiff, John Doe, by and through his attorneys, NACHTLAW, P.C., hereby demands a

jury trial in the above-captioned matter for all issues so triable.

        Respectfully submitted,

        NACHTLAW, P.C.

        /s/ David A. Nacht
        David A. Nacht

19

Attorney for Plaintiff
101 N. Main St., Suite 555
Ann Arbor, Michigan 48104
(734) 663-7550
dnacht@nachtlaw.com

Date: April 5, 2022