# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

JOHN DOE,

        Plaintiff,

v.

BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS, and in
their individual and official capacities,
VIRGINIA VERMILLION,
VIKRAM D. AMAR,
VERITY WINSHIP, and
LESLEY WEXLER,

        Defendants.

Case No.: 22-cv-0207

Hon. Colin S. Bruce

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

David A. Nacht (P47034)
Amanda M. Ghannam (P83065)
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main St., Suite 555
Ann Arbor, Michigan 48104
(734) 663-7550
dnacht@nachtlaw.com
aghannam@nachtlaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION AND STATEMENT OF FACTS .......... 1

ARGUMENT .......... 4

I. Plaintiff is likely to succeed on the merits of his Fourteenth Amendment due process claims, Fourteenth Amendment equal protection claims, and disability discrimination claims .......... 4

A. Fourteenth Amendment to the U.S. Constitution: Due Process of Law .......... 4

B. Disability Discrimination .......... 5

C. Fourteenth Amendment: Equal Protection of the Law .......... 9

II. Plaintiff will suffer irreparable harm without injunctive relief. .......... 10

III. There is no adequate remedy at law .......... 11

IV. Plaintiff's requested injunctive relief will not result in substantial harm to others .......... 12

V. The public interest favors granting Plaintiff's requested injunctive relief .......... 13

CONCLUSION .......... 14

# **TABLE OF AUTHORITIES**

**Cases**

Jackson v. City of Chicago, 414 F.3d 806, 810 (7th Cir.2005) ....................................................... 6

*Alek v. Univ. of Chicago Hosps*., 54 F. App'x 224, 226 (7th Cir. 2002) ........................................ 8

*Anita J. v. Northfield Twp.-Glenbrook N. High Sch. Dist. 225*, No. 94-C-6480, 1994 WL 604100, at *3 (N.D. Ill. Nov. 4, 1994) ................................................................................................... 12

*Baskin v. Bogan*, 983 F. Supp. 2d 1021, 1029 (S.D. Ind. 2014) ................................................... 13

*Bhalerao v. Illinois Dep't of Fin. & Pro. Reguls*., 834 F. Supp. 2d 775, 782 (N.D. Ill. 2011) ..... 12

*Bonnette v. District of Columbia Court of Appeals*, 796 F.Supp.2d 164, 186 (D.D.C.2011) ....... 11

*Cassimy v. Bd. of Educ. of Rockford Pub. Sch*., Dist. No. 205, 461 F.3d 932, 936 (7th Cir. 2006) 6

*Doe v. Bd. of Trustees of Univ. of Illinois*, 429 F. Supp. 2d 930, 943 (N.D. Ill. 2006). ................. 9

*Doe v. Trustees of Indiana Univ*., No. 120-CV-02006, 2020 WL 7028030, at *3 (S.D. Ind. Nov. 30, 2020) ..................................................................................................................................... 4

*Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975 (7th Cir. 2009) ......................................... 7

*Elguindy v. Commonwealth Edison Co*., 903 F. Supp. 1260, 1269 (N.D. Ill. 1995) ..................... 8

*Exodus Refugee Immigr., Inc. v. Pence*, 165 F. Supp. 3d 718, 742 (S.D. Ind.), aff'd, 838 F.3d 902 (7th Cir. 2016) ......................................................................................................................... 13

*GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) ........................... 12

*Goss v. Lopez*, 419 U.S. 565, 584 (1975) ....................................................................................... 5

*Hess v. Bd. of Trustees of S. Illinois Univ*., 839 F.3d 668, 673 (7th Cir. 2016) ............................. 5

*Hlavacek v. Boyle*, 665 F.3d 823, 825 (7th Cir. 2011) ................................................................... 4

*Hoffman–Dombrowski v. Arlington Int'l Racecourse*, Inc., 254 F.3d 644, 652 (7th Cir.2001) ...... 8

*Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015) ...................................... 8

*Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) ..................................... 4

*Joelner v. Vill. Of Washington Park, III,* 378 F.3d 613, 620 (7th Cir. 2004) ............................... 13

*Khan v. Midwestern Univ.*, 879 F.3d 838, 844 (7th Cir. 2018). .....................................................7

*Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). ........................................................................4

*Novak v. Bd. of Trustees of S. Illinois Univ.*, No. 12-CV-7-JPG, 2012 WL 5077649, at *8 (S.D. Ill. Oct. 18, 2012) ......................................................................................................................6, 9

*Parker by Parker v. Trinity High Sch.*, 823 F. Supp. 511, 518 (N.D. Ill. 1993) .....................10, 11

*Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677, 687 (S.D. Ohio 2012) .........................10, 11

*Smith on Behalf of Smith v. Severn*, 129 F.3d 419, 429 (7th Cir. 1997). ........................................9

*Sung Park v. Indiana Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012).........................4

*Thomas v. Davidson Academy*, 846 F. Supp. 611, 620 (M.D. Tenn. 1994 .................................13

*Turner v. Vincennes Univ.*, No. 317-CV-00044, 2019 WL 8266875, at *7 (S.D. Ind. Mar. 29, 2019)..................................................................................................................................6

**Statutes**

42 U.S.C. § 12102(2)(A). ................................................................................................................7

**INTRODUCTION AND STATEMENT OF FACTS**

This case arises out of Defendants' wrongful expulsion of Plaintiff John Doe from the University of Illinois College of Law during the second semester of his final year of law school. Plaintiff incorporates by reference the factual allegations contained in his Verified Complaint. [ECF No. 1]. Those facts may be summarized as follows:

Plaintiff, John Doe, enrolled in the College of Law in Fall 2016 and excelled during his first year, maintaining a 3.0 GPA and participating in the College's Moot Negotiations Competition and softball team. Like many Americans, Mr. Doe suffers from disabilities in the form of clinically diagnosed anxiety and depression. [ECF No. 1, ¶ 12]. During Plaintiff's second year, symptoms of his disabilities became overwhelmingly severe. [ECF No.1, ¶ 21]. He experienced debilitating anxiety and panic that paralyzed and incapacitated him to the point that he was unable to leave his home, causing him to miss several class sessions during the spring 2018 semester. In April 2018, after Mr. Doe explained that his disabilities had caused him to miss class, Defendants, without offering any support or accommodation, forced Plaintiff to withdraw from the university.  [ECF No. 1, ¶¶ 29-33] Plaintiff sought medical treatment, committed to a rigorous course of care over the next year so that he could return to school and complete his law degree, and applied for re-admission in the fall of 2020. Plaintiff wrote to the University:

> …[W]hat I am asking is to be allowed to return for my final semester and complete my degree upon successful completion of the academic requirements. I understand that I am not entitled to this…
>
> My problem was never that I struggled with the material … the reason that I am in this incredibly vulnerable position is because I failed to manage my mental health… I felt completely paralyzed and was filled with anxiety, a feeling that I had never experienced before. Because I neglected to recognize it and handle it effectively, I let that feeling imprison me. In the latter part of the [spring 2018] semester, I could barely leave my house when I needed groceries. This year, I sought out extensive psychiatric treatment for anxiety and dysthymia… I have experienced a great deal

> of progress and relief since beginning this treatment, which primarily includes one-on-one counseling…
>
> I wish that the fear, anxiety, and depression that I have gone through left some physical mark, like a broken bone or a missing limb, so that I wouldn't be tasked with attempting to explain it. Everyone knows what a broken bone feels like, but until last year, I had no idea what clinical anxiety looked or felt like… If you allow me to return this fall, I will do everything to show you that you made the right decision and that I can put this nightmare behind me. [ECF No. 1, ¶ 43]

Defendants conditionally re-admitted Plaintiff for the fall 2020 semester but were determined to push him out of school and his chosen profession. As a condition of his reinstatement, Defendants imposed a set of requirements, including sending Defendant Virginia Vermillion, Dean of Students, weekly emails detailing what classes he had missed or been late to. [ECF No. 1, ¶¶ 44-46]. Plaintiff complied with these requirements fully during the fall semester, earned A and B grades in all his courses, and was fully committed to completing his education and joining the legal profession.

Plaintiff worked so hard to catch up that by the spring 2021 semester, he only needed one more three-credit experiential learning course to graduate. [ECF No.1, ¶59]. He enrolled in his final course, attended all class sessions, and interacted with his professor regularly. In short, Plaintiff was back on track to graduate. But just a few weeks into the semester, after Plaintiff failed to respond immediately to one email from Dean Vermillion, Defendants abruptly expelled Plaintiff via a letter stating:

> Your record of academic inattention, failure to comply with the terms of your conditional re-admission of which you have been repeatedly reminded, your failure to enroll in the necessary course work required for graduation, and your failure to respond to various communications from the College of Law has been brought to our attention. As a result, the College of Law is now initiating the necessary steps to permanently withdraw you from your Spring 2021 course and from enrollment at the University of Illinois College of Law, effective immediately. Since you are being withdrawn from your Spring 2021 course specifically, and from the College of Law more generally, you are prohibited from participating in this class or any other College of Law classes. Any violation of this prohibition will result in an

2

immediate referral to the University of Illinois Police Department. If you have any questions, please do not hesitate to contact me. We wish you the best in your future endeavors. [ECF No.1, ¶66].

Defendants' arbitrary and capricious decision was not based on any academic or behavioral consideration. Defendants never offered Plaintiff any accommodation for his disabilities. Instead, they forced him out of the law school because of them.

After being forced out of law school because of his anxiety and depression, Plaintiff was diagnosed with lymphoma in the fall of 2021. [ECF No.1, ¶65]. It is possible that the severity of his anxiety and depression symptoms was linked to the fact that he had undiagnosed cancer. Mr. Doe has undergone several grueling rounds of chemotherapy. with all of its notoriously brutal associated side effects, and is recovering from the toll that cancer and chemo have taken on him. He is both physically and psychologically ready and determined to return to school. [ECF No 1, ¶86]. Now that Mr. Doe is on the path to recovery from cancer, the time has come for him to complete his education and pursue his dream of becoming a practicing attorney and contributor to the legal profession. [ECF No. 1, ¶87]. But he cannot do so without an order from this Court. Plaintiff seeks an equitable order from this Court enjoining his wrongful expulsion, compelling Defendants to restore his status as a student in good standing, and compelling Defendants to remove any references to his wrongful expulsion from their records.

Plaintiff now brings claims against Defendants for disability discrimination in violation of the Americans with Disabilities Act and Rehabilitation Act and violations of his constitutional rights to due process and equal protection under the Fourteenth Amendment to the U.S. Constitution. Plaintiff seeks a temporary restraining order and preliminary injunction enjoining his expulsion, compelling Defendants to reinstate him as a student in good standing, and compelling Defendants to remove any references to his wrongful expulsion from their records. Without such

injunctive relief, Plaintiff will effectively be forced out of a career in the practice of law because of his disabilities.

## ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). Under the Seventh Circuit's "sliding scale" approach, "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Doe v. Trustees of Indiana Univ.*, No. 120-CV-02006, 2020 WL 7028030, at *3 (S.D. Ind. Nov. 30, 2020) (quoting *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Here, Plaintiff can establish that each factor supports the grant of his motion, with particular emphasis on the balance of harms, which weighs entirely in his favor.

**I. Plaintiff is likely to succeed on the merits of his Fourteenth Amendment due process claims, Fourteenth Amendment equal protection claims, and disability discrimination claims.**

At this first stage of Plaintiff's motion for injunctive relief, Plaintiff "need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Rather, he must merely "include a demonstration of how [he] proposes to prove the key elements of [his] case. *Id*. Plaintiff will prove the elements of his claims as follows:

**A. Fourteenth Amendment to the U.S. Constitution: Due Process of Law**

To establish a due process violation, a plaintiff "must show that [the defendant] deprived him of a cognizable property interest and that it failed to give him whatever process was due for that particular deprivation." *Hlavacek v. Boyle*, 665 F.3d 823, 825 (7th Cir. 2011). Like the student in *Hlavacek,* Mr. Doe had a protected property interest in his ability to continue his graduate education. *See id*; *Sung Park v. Indiana Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012)

4

(noting that plaintiff would have had a protected property interest in her right to continue her dental education); *Hess v. Bd. of Trustees of S. Illinois Univ.*, 839 F.3d 668, 673 (7th Cir. 2016) (plaintiff had protected interest in continued education and defendants deprived him of that interest when expelling him).

The Constitution requires that students receive notice and a meaningful opportunity to be heard prior to discipline. *Hess* at 677. The more severe the deprivation, the more process is required. *Hess, citing Goss v. Lopez*, 419 U.S. 565, 584 (1975) (discussing an "informal give-and-take" between the student and disciplinarian and noting that where a student is suspended for ten days or fewer, the required process is minimal). Here, on the other hand, Mr. Doe received the most serious possible discipline: a permanent expulsion – and Defendants did not just fail to afford Mr. Doe adequate process; they failed to afford him any process at all. Instead of any sort of notice and opportunity to be heard whatsoever, they issued him an abrupt, immediate, and permanent expulsion, prohibited him from participating in class, and banned him from campus with the threat of police involvement. Unlike in *Hess* – where the student-plaintiff was arrested on suspicion of stabbing somebody in a bar fight, and thus the school's decision to remove him from campus before a hearing was justified – there is absolutely no reason for the Defendants in this matter to have taken such extreme measures. There have never been any allegations that Mr. Doe poses a danger of any sort. Defendants are unlikely to present a constitutionally compelling reason to justify their acts. Thus, Mr. Doe is likely to succeed in his claims that he was deprived of constitutionally adequate procedure prior to his expulsion.

### B. Disability Discrimination

As a threshold matter, district courts within this judicial circuit, as well as the Courts of Appeals for the First, Third, Fourth, and Eleventh Circuits, have found that claims for money

damages under Title II of the Americans with Disabilities Act are not barred by the Eleventh Amendment. *See Novak v. Bd. of Trustees of S. Illinois Univ.*, No. 12-CV-7-JPG, 2012 WL 5077649, at *8 (S.D. Ill. Oct. 18, 2012); *Turner v. Vincennes Univ.*, No. 317-CV-00044, 2019 WL 8266875, at *7 (S.D. Ind. Mar. 29, 2019) (denying summary judgment on Americans with Disabilities Act and Rehabilitation Act claims where disabled plaintiff was forced to withdraw from funeral services program). Accordingly, Plaintiff proceeds with claims for both money damages (against all defendants) and prospective injunctive relief (against the individual defendants in their official capacities) under the ADA and the Rehabilitation Act.

"In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability." *Jackson v. City of Chicago,* 414 F.3d 806, 810 (7th Cir.2005). Courts "generally analyze and apply the RA and the ADA in a consistent manner" thus, "the court's analysis under the ADA applies equally to the RA." *Turner v. Vincennes Univ.*, at *7 (citing *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 607 (7th Cir. 2004).

To show that he is disabled, Plaintiff must establish "(1) that he has a "physical or mental impairment that substantially limits [him in] one or more major life activities"; (2) that he "has a record of such an impairment"; or (3) that the [defendant] "regarded [him] as having such an impairment." *Cassimy v. Bd. of Educ. of Rockford Pub. Sch.*, Dist. No. 205, 461 F.3d 932, 936 (7th Cir. 2006). ADA regulations define a disability to include a "mental or psychological disorder", 29 C.F.R. § 1630.2(h)(2), and the Seventh Circuit has held that depression and anxiety, where they interfere with major life activities, render a plaintiff disabled. See, e.g., *Ekstrand v. Sch. Dist. of*

*Somerset*, 583 F.3d 972, 975 (7th Cir. 2009) (teacher who suffered from seasonal depression and anxiety was qualified disabled individual). Mr. Doe's depression and anxiety interfered with major life activities including, but not limited to, sleeping, working, and learning. 42 U.S.C. § 12102(2)(A). He can also establish that Defendants perceived him as disabled, illustrated by the University's readmission letter stating:

> Thank you for your recent and open letter detailing the efforts you have undertaken to ensure you were ready to return to the College. This level of personal analysis and care is not always easy to undertake. And, we truly appreciate that it is even more difficult to share that level of analysis with others outside of one's family circle. Nonetheless, you took the necessary but difficult steps… The faculty and administrators of the College of Law stand ready to assist you in realizing [your] potential, but we can do so only if you will invest yourself in your studies.

Next, Mr. Doe can easily establish that he was qualified to participate in the College of Law J.D. program. "In the context of a university, a person is "otherwise qualified" if she is able to meet all of the program's requirements in spite of her disability, with or without a reasonable accommodation." *Khan v. Midwestern Univ.*, 879 F.3d 838, 844 (7th Cir. 2018). Here, Mr. Doe not only gained admission (and readmission), but did exceptionally well during his first year, with a strong GPA and participation in extracurriculars, and when he returned in the fall of 2020, with excellent attendance and all A/B grades. Mr. Doe's case is thus distinguishable from a case like *Khan,* in which the plaintiff had failed more classes than the university permitted and was held to be unqualified for her medical program. Mr. Doe did not fail any classes or fail to meet any of the J.D. program's requirements: He was enrolled in the final course he would need to graduate, kept his grades up, and attended class regularly.

Finally, Mr. Doe can establish that he was excluded from and denied the benefits of the College of Law's educational program based on his disability. To do so, he must show "that his disability was a "but for" cause of his [expulsion], which can be demonstrated through direct or

7

circumstantial evidence, with circumstantial evidence encompassing, among other things, suspicious timing and pretext for the [expulsion]." *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015) (internal citation omitted). Pretext can be established by a showing that the school's explanations for its actions "had no basis in fact, were not the real reason for the decision…, or were insufficient to motivate the action." *Alek v. Univ. of Chicago Hosps.*, 54 F. App'x 224, 226 (7th Cir. 2002), *citing Hoffman–Dombrowski v. Arlington Int'l Racecourse*, Inc., 254 F.3d 644, 652 (7th Cir.2001).

Here, the school's expulsion letter accused Mr. Doe of a "record of academic inattention," "failure to comply with the terms of conditional re-admission," "failure to enroll in the necessary course work required for graduation", and "failure to respond to various communications from the College of Law." However, Mr. Doe had in fact done quite well in his academics, was enrolled in the final course he needed to graduate, and complied with the terms of his readmission. If the phrase "record of academic inattention" referred to Mr. Doe's missing classes prior to his withdrawal and reinstatement, Defendants were well aware that this was a result of the severe exacerbation of Mr. Doe's disabilities. Finally, the alleged "failure to respond to various communications" referred to *one* missed email from Defendant Vermillion, less than four weeks into the spring semester. Defendants' decision was arbitrary and capricious and was not based on any academic or behavioral considerations whatsoever. Mr. Doe is likely to succeed in a showing that the one missed email was insufficient to justify his immediate expulsion and banishment from campus and was thus a pretext for discrimination based on his disability. Illlinois district courts have permitted plaintiffs to proceed to trial on the question of whether alleged communication issues were pretextual. *See, e.g., Elguindy v. Commonwealth Edison Co.*, 903 F. Supp. 1260, 1269 (N.D. Ill. 1995) (triable issue of fact precluded summary judgment on issue of pretext where

8

employer purported that "communication issues" precluded plaintiff's promotion). Moreover, there is no evidence that the administrators involved in Mr. Doe's termination made any attempt to afford Mr. Doe accommodations "to ensure that his disability did not interfere with his having a fair opportunity to meet the University's standards." *Novak v. Bd. of Trustees of S. Illinois Univ.*, 777 F.3d 966, 976 (7th Cir. 2015) (granting summary judgment on disability discrimination claims where, unlike here, only evidence of pretext was minor errors in professors' grading of plaintiff's work). Here, unlike in *Novak,* there is reason to believe that Mr. Doe's abrupt dismissal was anything but "an honest, professional evaluation of his potential for the particular program in which he was enrolled." *Novak at 977*.

### C. Fourteenth Amendment: Equal Protection of the Law

"An equal protection violation occurs only when different legal standards are arbitrarily applied to similarly situated individuals." *Smith on Behalf of Smith v. Severn*, 129 F.3d 419, 429 (7th Cir. 1997). Plaintiff is likely to succeed on the merits of his equal protection claims, which allege 1) that he was treated differently than individuals without disabilities and 2) that he was intentionally singled out for differential treatment from similarly situated students without a rational basis ("class of one" claim). *See Doe v. Bd. of Trustees of Univ. of Illinois*, 429 F. Supp. 2d 930, 943 (N.D. Ill. 2006). Although his status as a disabled person and the deprivation of his education may not trigger a strict-scrutiny analysis, Mr. Doe is nevertheless protected by the requirements of the Equal Protection Clause, *see id,* and the state action in question must therefore be rationally related to a legitimate government interest in order to meet constitutional standards. *Smith* at 429.

In *Doe,* a case similar to Mr. Doe's, the plaintiff, who suffered from learning disabilities, brought suit against the Board of Trustees of the University of Illinois after he was dismissed from

the M.D./Ph.D. program. There, the Court held that the plaintiff had sufficiently stated a claim for a violation of his constitutional right to equal protection where he alleged that the defendants had intentionally discriminated against him because of his disabilities and without a rational basis – the same types of claims that Mr. Doe makes here. The Defendants are unlikely to be able to present a rational basis for their treating Mr. Doe differently than other students nor for singling him out for 1) forced withdrawal 2) stringent standards upon readmission and 3) immediate expulsion and banishment from campus after merely missing an email from the school.

## II. Plaintiff will suffer irreparable harm without injunctive relief.

"When Congress has enacted a statute such as the ADA to prohibit discrimination against individuals with disabilities, the occurrence of the very discrimination Congress sought to prevent is the type of irreparable injury that may support the issuance of an injunction." *Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677, 687 (S.D. Ohio 2012). Thus, disability discrimination alone necessitates the granting of Plaintiff's Motion – but moreover, Plaintiff's expulsion has led to a significant delay in the completion of his law degree and his ability to begin his legal career. If he had graduated after the Spring 2021 semester, he would have taken the bar exam that summer, received his results, applied for jobs, and would very likely be working as an attorney by now. Instead, he remains unable to complete his law degree and will be delayed in graduating, sitting for the bar exam, and beginning his career for at least another year, assuming he is permitted to return to school and graduate in the spring 2022 semester.

Numerous courts have held that such academic and career delays justify injunctive relief. The burdens of academic probation, losing the specific educational opportunities offered by a particular school, and missing out on graduation are sufficient to establish irreparable harm. *Parker by Parker v. Trinity High Sch.*, 823 F. Supp. 511, 518 (N.D. Ill. 1993) (students expelled from

private high school established irreparable harm for preliminary injunction purposes). District courts have also found that "a delay in the ability to pursue a chosen profession" constitutes irreparable harm. *See, e.g., Bonnette v. District of Columbia Court of Appeals*, 796 F.Supp.2d 164, 186 (D.D.C.2011). And in *Sellers, supra,* the court granted a temporary injunction permitting the plaintiff to continue her enrollment in a nursing program where forcing her to dis-enroll would subject her to irreparable injury in the form of loss of educational opportunities, inability to pursue her vocation, and psychological damage. The same result should occur here, where not only would Plaintiff be subject to the same types of injuries, but the psychological harm will be doubled as this is the second time Defendants have forced him out of his J.D. program.

### III. There is no adequate remedy at law.

Plaintiff cannot be compensated for this harm by money damages alone. As described above, he has been delayed in completing his education and beginning his legal career by over a year already. While Plaintiff could be compensated financially for lost tuition, the other damages he has sustained – the emotional distress of being expelled while suffering from severe depression and anxiety after having been forced to withdraw and taking on the arduous process of treating his disabilities and gaining readmission; the denial of his ability to pursue a legal career; the reputational harm resulting from the delay in his ability to graduate, sit for the bar exam, and begin valuable work experience; etc. – cannot be quantified in monetary terms. *See Sellers v. Univ. of Rio Grande, supra* (granting temporary restraining order where forcing plaintiff out of nursing program would subject her to "intangible injuries" that could not be compensated financially); *Parker by Parker v. Trinity High School, supra* (no adequate remedy at law for either expelled student-plaintiff where one wished to attend Trinity High School for remainder of her high school years and the other was due to graduate after four years of study); *Anita J. v. Northfield Twp.-*

*Glenbrook N. High Sch. Dist. 225*, No. 94-C-6480, 1994 WL 604100, at *3 (N.D. Ill. Nov. 4, 1994) (no adequate remedy at law where "the expulsion from school constitutes an educational loss which is particularly difficult to remedy through money damages.") In another case involving the rights of licensed professionals to continue in their chosen careers, *Bhalerao v. Illinois Dep't of Fin. & Pro. Reguls.*, 834 F. Supp. 2d 775, 782 (N.D. Ill. 2011), another Illinois District Court held that a physician suffered irreparable harm and had no adequate remedy at law where he was unable to continue in his chosen career as a physician, and "monetary damages fall short of remedying the loss associated with…the end to his chosen occupation." The same reasoning applies to Plaintiff's case, where he has been unable to continue in his chosen career as an attorney.

For these reasons and the reasons described in Section II above, this factor weighs in favor of granting Plaintiff's Motion.

**IV. Plaintiff's requested injunctive relief will not result in substantial harm to others.**

To determine the balance of equities, the court "balances the irreparable harm that the moving party would endure without a preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief using a "sliding scale approach": "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (internal citations and quotations omitted).

Here, while denying Plaintiff's motion would result in significant and irreparable harm to him and his future career, granting the motion and allowing Mr. Doe to return to school and complete his degree would not result in any harm whatsoever to anyone. There is no evidence that Mr. Doe is disruptive or dangerous or that the University would suffer financial or any other harm

12

by permitting him to return to school. He has never failed a class. When Defendants expelled Mr. Doe, they merely accused him (falsely) of "academic inattention" and "failure to communicate". If Mr. Doe were to return to school, the only thing that would happen to Defendants is that they would continue to obtain his tuition money and communicate with him during his final semester. This can hardly be considered harmful. *See Sellers, supra* (no one harmed by order permitting plaintiff to enroll in nursing courses). Likewise, here, because the only person who has been and can be harmed in this situation is Plaintiff, this factor favors granting his requested injunction.

### **V. The public interest favors granting Plaintiff's requested injunctive relief.**

It is well established that "the public interest is served when constitutional rights are vindicated." *Exodus Refugee Immigr., Inc. v. Pence*, 165 F. Supp. 3d 718, 742 (S.D. Ind.), aff'd, 838 F.3d 902 (7th Cir. 2016) (citing *Joelner v. Vill. Of Washington Park, III,* 378 F.3d 613, 620 (7th Cir. 2004). Here, Plaintiff has asserted violations of his constitutional rights to due process and equal protection of the laws. The state "does not have a valid interest" in upholding decisions that "violate these constitutional guarantees." *Baskin v. Bogan*, 983 F. Supp. 2d 1021, 1029 (S.D. Ind. 2014) (*citing Joelner* at 620). Moreover, the ADA reflects the fact "that there is a significant public interest in eliminating discrimination against individuals with disabilities" and that this interest is furthered by appropriate injunctive relief. *Sellers, supra* at 688, quoting *Thomas By and Through Thomas v. Davidson Academy*, 846 F. Supp. 611, 620 (M.D. Tenn. 1994). The public interest can only be served by eliminating discrimination in the pursuit of a career in the legal profession, a field in which significant efforts have been made to further diversity and eliminate discrimination. Thus, granting Plaintiff's requested relief furthers the public interest in eliminating disability discrimination and vindicating constitutional rights. Moreover, granting Plaintiff's request will not harm the public interest at all.

## CONCLUSION

For these reasons, injunctive relief is proper and Plaintiff's motion should be granted.

                          Respectfully submitted,

                          */s/ David A. Nacht*
                          David A. Nacht (P47034)
                          NachtLaw , P.C.
                          *Attorneys for Plaintiff*
                          101 N. Main St., Ste. 555
                          Ann Arbor, MI 48104
                          734-663-7550
                          dnacht@nachtlaw.com

Dated: April 5, 2022